SCHOOL DISTRICT No. 61 OF PLATTE COUNTY, MISSOURI, RESPONDENT, v. RAILEY & BROTHER BANKING CO., S. L. CANTLEY, COMMISSIONER OF FINANCE ET AL., APPELLANTS.—55 S. W. (2d) 699.

Kansas City Court of Appeals.   November 21, 1932.

C. A. Leedy, Jr., for respondent.

Brown, Douglas & Brown for appellant.

BOYER, C.—This is an appeal from a judgment of the circuit court by which a priority demand in the sum of $5456.14 was allowed and ordered paid out of the assets of a failed bank in the hands of the commissioner of finance and his special deputy commissioner. Railey & Brother Banking Company, hereinafter referred to as the bank, passed to the hands of the commissioner of finance in July, 1930, for liquidation.   The claimant is a town school district governed by the provisions of the statute set forth in Article 4, Chapter 57, Revised Statutes 1929.   At the time the bank failed, and for an indefinite period prior thereto, one E. M. Hardesty was the pres-

ident of the bank and also the selected treasurer of the school district. He was re-elected to the position of treasurer of the district on July 8, 1929, which was the last election of officers prior to the time the bank closed. Certain moneys of the district were deposited from time to time by said treasurer in the bank and said deposits were received and treated by the bank as general deposits and like the deposits of any other customer. The account on the ledger of the bank was in the name of ''Treasurer, School District No. 61.'' When the bank closed this account showed a balance to the credit of the district in the sum of $3956.14, and within time the succeeding treasurer of the school district filed a claim with the liquidator for said sum and demanded preference thereon. The liquidator allowed the claim as a common claim and certified it to the circuit court for disposition on the question of preference. When the claim came on to be heard in the circuit court and at the close of the evidence, the claimant requested and the court allowed, over the objection of defendants, an amendment of said claim increasing the amount thereof in the sum of $1500, which made the total claim $5456.14. The amendment to the claim was not requested or made until after the lapse of time for filing claims designated by the notice of the liquidator and by statute. The claim was allowed for the full amount and ordered to be paid prior to the payment of general creditors.

It is conceded by appellants, and the evidence shows, that Hardesty, as treasurer of the school district did not give any bond as required by law, section 9335, Revised Statutes 1929; and the board of education of said district did not at any time advertise for bids for the deposit of school funds and did not select the bank in question as a depository of its funds as required by section 9362, Revised Statutes 1929. Under such circumstances it is agreed that whatever funds of the school district were in the bank at the time it closed and passed to the commissioner of finance were trust funds, and that claimant is entitled to recover for that amount, and such is the law. [In re Cameron Trust Co., 51 S. W. (2d) 1025.] It is contended, however, by appellants that the true amount is that shown by the books of the bank at the time it closed, being the sum of $3956.14, while respondent contends that the amount should be increased by the sum of $1500 and that it is entitled to the full award made by the court. The chief contention at the trial and here is over the item of $1500. The facts now to be stated give rise to the controversy.

Shortly after the bank closed the newly elected treasurer of the district called at the bank to obtain the book and records of the former treasurer of the district. Among the papers found by him was a debit slip in the handwriting of Hardesty. It reads as follows:

"DEBIT
        Tr. School Dist No. 61—
                        1500.00
        Loan E. M. Hardesty
                PAID
                3—19—28
                80.504."

An item of $1500 was posted on the bank ledger as a charge against the account of the treasurer of the school district under date of March 29, 1928, and on the same day there was a credit of $1500 to the personal account of E. M. Hardesty on the books of the bank. The evidence is that the directors had never authorized or made a loan to Hardesty or ratified such a loan, and that it was not discovered by them that the $1500 was not in the account of the school money until after the bank closed. There is no evidence that any officer of the bank, other than Hardesty, knew anything about that situation.

In the finding and judgment of the court it is recited:

"The court further finds that on or about March 29, 1928, the said E. M. Hardesty, treasurer of said school district and president of said bank, as aforesaid, without the knowledge or consent of claimant district, and the other officers thereof, did, by means of a debit slip, make a certain entry upon the books of said bank, and the individual ledger sheet showing, or purporting to show the account of claimant therein, by which there was attempted to be withdrawn $1500 of such school funds so remaining in said bank, and belonging to claimant, and at the same time credited the sum of $1500 to his personal account in said bank, and personally withdrew and had the benefit thereof, . . .

"The court further finds that the act of said Hardesty in attempting to withdraw said sum of $1500 from said account, and in crediting that amount to his personal account, was not an act as treasurer of claimant district, but was his act as an officer of said bank, and that such acts on his part did not operate to withdraw any sum whatever from the funds of claimant so held by said bank, and did not have the effect of relieving said bank of liability to said school district for the aforesaid sum of $1500 so attempted to be withdrawn."

It is admitted that assets reaching the hands of the liquidator are more than sufficient to pay preferred claims.

The deposit of school money in a bank which has not been legally designated as a depository is illegal and a bank receiving the deposit under such circumstances becomes a trustee *ex maleficio*.

When such deposits pass into the general assets of the bank and said assets so enhanced pass to its assignee or liquidator,

there is no question but that said funds may be recovered in full as against the general creditors. It is appellants' position, however, that while the bank received the total amount of $5456.14 as a trust fund, it returned $1500 of said sum to the treasurer of the district, who was the only person authorized to receive it, and that the trust was thereby discharged *pro tanto;* that the bank received no benefit from said $1500 and that the assets which passed to the commissioner of finance were not enhanced to the extent of that $1500, but were enlarged only to the extent of $3956.14 which remained on deposit in the treasurer's account; that the school funds in the hands of the treasurer were trust funds for the safekeeping of which he was required by law to give bond and the bank is not responsible for his misapplication of those funds.

We think that the points of appellants must be sustained and that the allowance made by the court is excessive in the sum of $1500. We are led to this conclusion in consideration of the undisputed facts in the case and of the law which we deem applicable to the situation. Under the evidence it is clear that the treasurer of the school district intended to and did withdraw from the bank $1500 of the school money which at the time was in the bank account of the treasurer. This he had an unqualified right to do. He was the chosen custodian of the school funds and entitled to the possession thereof. When this withdrawal was made the bank discharged its obligation to that extent in reference to the funds of the district in its hands. Claimant could not trace that portion of the funds into the assets of the bank which passed to the hands of the liquidator. The commissioner of finance did not receive any assets of the bank which were enhanced by that $1500. The bank did not receive any benefit from the transaction. Claimant by its own evidence traced the $1500 out of the assets of the bank and into the hands of the treasurer of the district who thereafter disbursed the money for his own benefit as found by the court.

It is true, as contended by respondent, that where a bank is in the possession of trust funds mingled with its general assets and it thereafter makes disbursements from the common fund, said disbursements are presumed to be out of its own funds and not out of the trust funds. This principle is well settled and sustained by authorities cited by both parties. Likewise it is well settled that the beneficiary of a trust fund may recover it from the trustee or his assignee, provided the assets reaching the hands of the assignee are enlarged by the fund sought to be recovered. We think the fatal defect in plaintiff's claim to the item of $1500 is the fact that it failed to show that the bank received any benefit of said item of $1500, and failed to show that the assets passing to the commissioner were in any way increased by that item; and the further fact affir-

matively shown that said sum of $1500 was returned by the bank
to the treasurer of the school district who was entitled to receive it.
We are not in accord with the finding of the learned trial court
that Hardesty merely attempted to withdraw but did not withdraw
the sum of $1500 from his account as treasurer, and that said at-
tempt was not an act of the treasurer, but an act of an officer of
the bank. The treasurer actually withdrew the money, and the court
found that he appropriated it to his own use. He was legally en-
titled to withdraw it. The bank was obligated, upon his demand,
to return any part or all of the money to him., After the money was
returned to the treasurer the bank was in no way responsible for his
defalcation. In the absence of guilty knowledge it was not bound
to see that he applied the school money properly. "It is generally
held that a bank is not a *particeps criminis* merely because it knows
that a trustee is depositing trust funds into his personal account and
that from time to time he is making withdrawals from that account;
if it has no reason to know that the trustee is acting in breach of
trust." [Perry on Trusts and Trustees (7 Ed.), sec. 828b, page
1419 and cases cited; McCullam v. Third National Bank, 209 Mo
App. 266, 280, et seq., 237 S. W. 1051.] There is no evidence upon
which the bank could be held liable for participation in the wrong
committed by the treasurer.

Respondent relies upon Nichols v. Bank of Syracuse, 220 Mo. App.
1019, 278 S. W. 793; Bank v. Brightwell, 148 Mo. 358, 49 S. W.
994, and Wasman v. City National Bank, 52 Fed. (2d) 705. The
case at bar is distinguishable upon the facts from all of said cases
and is primarily distinguished by the facts heretofore recited that
the bank received no benefit of the $1500 which the school treasurer
withdrew; there was no debt paid to the bank or any other benefit
accruing to it. The misappropriation of the funds by the treasurer
was by one who had a right to demand and receive the funds from
the bank at any time, and the bank not only had the right but was
in duty bound to deliver said funds to him upon his demand. No
such facts appear in any case which has been called to our attention.
The loss of the school district, if any, is due to the fault of its agent
and to the neglect of the school board. The treasurer should have
been required to give a bond (Sec. 9335, R. S. Mo. 1929), and should
have made an accounting annually (Sec. 9338, R. S. Mo. 1929). If
these requirements had been met the district would have been pro-
tected and the school board could have known the condition of the
bank account long before the bank closed.

The claim of respondent that the money withdrawn by the school
treasurer was the money of the bank and not school money cannot
be sustained. The facts show the reverse. We must hold that assets
coming into the hands of the commissioner of finance were not in-

creased to the extent of $1500 by the transactions shown in evidence, and unless it so appears claimant cannot recover that item. Our conclusion that plaintiff upon the evidence must fail and that the judgment was excessive is supported by numerous authorities, some of which are: Porterfield v. Farmers' Exchange Bank of Gallatin, 37 S. W. (2d) 936; Horigan Realty Co. v. Flynn, 213 Mo. App. 591, 253 S. W. 403; In re Cameron Trust Co., 51 S. W. (2d) 1025.

Holding as we do, it is unnecessary to consider the point that the claim was erroneously allowed to be amended out of time. Further, a kindred question is now pending before the Supreme Court in the case of Commerce Trust Co. v. Farmers' Exchange Bank of Gallatin, 52 S. W. (2d) 406, certified by this court.

The award to claimant as a preference should have been in the sum of $3956.14. If claimant will within ten days hereafter remit the sum of $1500, the judgment for the remainder will be affirmed; otherwise the judgment will be reversed and the case remanded. The Commissioner recommends that such be the judgment of this court. *Campbell, C.,* concurs.

PER CURIAM:—The foregoing opinion of BOYER, C., is adopted as the opinion of the court. The judgment is affirmed on condition that claimant within ten days hereafter remit $1500 of its judgment· otherwise the judgment will be reversed and the case remanded. All concur.